DANA A. WILLETT AND FRANCES T. WILLETT, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Willett v. Commissioner
Docket No. 27428-86.
United States Tax Court
T.C. Memo 1988-439; 1988 Tax Ct. Memo LEXIS 478; 56 T.C.M. (CCH) 171; T.C.M. (RIA) 88439; September 15, 1988. J. Timothy Bender, for the petitioners. Robert W. Kern, for the respondent. GERBER
MEMORANDUM FINDINGS OF FACT AND OPINION GERBER, Judge: By notice of deficiency dated April 8, 1986, respondent determined a deficiency of $ 19,807 in petitioners' Federal income tax for the calendar year 1982. The sole issued for decision is whether petitioners must include in gross income $ 45,000 received by petitioner-husband and paid over to a newly formed corporation. FINDINGS OF FACT Some of the facts have been stipulated and are incorporated by this reference. Petitioners, Dana A. Willett and Frances T. Willett, husband and wife, resided in Bay Village, Ohio, at the time that they filed their petition in this case. They filed their 1982 joint Federal income tax return with the Office of the Internal Revenue Service *479 in Cincinnati, Ohio. In 1976, Mr. Willett (petitioner) began working for CTI-Nuclear, Inc. (CTI), a manufacturer of air filtration equipment for use in the nuclear power industry. Petitioner eventually became the general manager of a CTI division and, on or about May 28, 1982, signed an agreement to extend his employment contract with CTI for the period from July 1, 1982 through December 31, 1982. CTI decided to terminate this aspect of their business. Accordingly, petitioner, as general manager, continued throughout 1982 to service CTI's customers and to conclude CTI's divisional operations. CTI based operations completely on December 31, 1982. Previously, however, on or about March 11, 1982, petitioner, a lawyer and two consultants formed a consulting company, WMW Industries, Inc. (WMW). Petitioner owned 25 percent of WMW's outstanding common stock and, in addition, signed an "Agreement Respecting Employment" with WMW dated July 1, 1982, whereby he agreed that "if other employment is approved by [WMW] * * * [petitioner] shall be obligated to turn over to [WMW] * * * all compensation received therefrom." In the contract, however, petitioner and WMW did not mention *480 petitioner's pre-existing employment contract with CTI. After signing the WMW agreement, petitioner, through WMW, asked CTI to pay his compensation directly to WMW. CTI, however, refused that request and similarly refused to execute a written contract with WMW for petitioner's services. Also at this time, petitioner, while at CTI, began to sell, for WMW's account, some surplus inventory that actually belonged to CTI. Nevertheless, petitioner, purportedly in compliance with the WMW agreement, paid $ 45,000 to WMW, representing compensation from CTI for his services as general manager from July 1, 1982 through December 31, 1982. In total, petitioner received compensation of $ 140,353.28 from CTI during 1982. To account for petitioner's payment, WMW credited its sales account with $ 45,000.04 in fees from petitioner's purported "management services." In addition, petitioner and WMW exchanged several letters by which petitioner purportedly assigned to WMW his rights to certain bonus payments from CTI. Petitioner, however, did not receive any bonus payments from CTI during 1982. Correspondingly, petitioner excluded $ 45,000 from his 1982 gross income and, in his joint 1982 Federal *481 income tax return, reported only $ 95,353 as his compensation from CTI. This amount represented petitioner's total compensation from CTI of $ 140,353 less the $ 45,000 at issue. However, respondent determined that petitioners must include the $ 45,000 at issue in their 1982 gross income. In support of his determination, respondent stated in his notice of deficiency that "income is taxed under section 61 * * * to the person who earns it and [the] * * * earner [may not] omit earned taxable income based on the assignment of said income." In this regard, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the year at issue. OPINION We must decide whether petitioners must include the $ 45,000 at issue in their 1982 gross income. Respondent argues that petitioner earned the $ 45,000 and, accordingly, must include it in his 1982 gross income. In addition, respondent argues that petitioner and WMW did not create a valid principal-agent relationship for Federal income tax purposes and did not effectuate valid assignments under local law. Considering our findings below, however, we need not address these arguments. Petitioner, on the other *482 hand, argues that his corporation, WMW, is the proper taxable entity in the present case and that, additionally, he may exclude the $ 45,000 at issue from his 1982 gross income because he paid it to WMW pursuant to his employment agreement. Specifically, petitioner, quoting the Fifth Circuit in , argues that WMW properly is taxable on the $ 45,000 at issue because "if compensation paid to one is paid to him as the agent or servant in fact, not fiction, of another, that income is taxable, not to the servant or agent as earner, but to its real earner, the principal" and, in this regard, cites ; ; and , for similar propositions. On the record before us, however, we hold for respondent for the following reasons. In general, income is taxable to those who earn it. See, e.g., ; . Correlatively, income relating to *483 employee services is taxable to a corporation, and not to the employee, if the corporation directed or controlled the employee and contracted with or otherwise indicated its control to the third party that used the employee's services. , affd. without published opinion (Johnson). To the same effect, see also , affd. ; . Thus, while petitioner concedes that he earned the $ 45,000 at issue as compensation from CTI, he argues that WMW is the proper taxable entity in the present case because it controlled his services at CTI. However, we find the facts here to be otherwise. In the present case, petitioner signed an employment agreement with WMW while already acting as a general manager for CTI under a newly extended employment contract. In the WMW agreement, petitioner did not address his pre-existing CTI contract or WMW's rights, if any, to control his actions as a manager for CTI. Petitioner then continued throughout *484 1982 to service CTI's customers and supervise CTI's affairs. Simply stated, petitioner, prior to forming WMW, contracted to serve as a general manager at CTI and continued to serve in that capacity after he formed WMW. Considering these actions, we simply cannot conclude that WMW controlled petitioner's services at CTI. Additionally, petitioner, in addressing the test set forth in Johnson, argues that CTI knew that WMW controlled petitioner's services at CTI. In particular, petitioner, apparently conceding that he sold some surplus inventory belonging to CTI, argues that CTI thereby acknowledged WMW's role in controlling petitioner's services at CTI. In this regard, however, petitioner acknowledges on brief that the inventory transactions were, indeed, "disputed transactions." Accordingly, we simply cannot conclude that CTI acknowledged WMW's purported control over petitioner's services. However, petitioner's supervisor, during 1982, testified consistently with CTI's refusal to pay petitioner's compensation directly to WMW or execute a contract with WMW for petitioner's services. Further, the supervisor had no knowledge of WMW's alleged control over petitioner's services *485 as a manager at CTI. Indeed, petitioner concedes on brief that his supervisor at CTI regarded him as an employee of CTI. On this record, we can only conclude that WMW did not control, contract for or clearly manifest to CTI its alleged control over petitioner's services at CTI. Accordingly, petitioner fails to convince us, in relation to the test set forth in Johnson, that his corporation is taxable on the $ 45,000 at issue. Petitioner argues, however, that Johnson is distinguishable from the present case because, unlike the taxpayer in Johnson, petitioner helped to establish WMW in order to service many customers and not merely to obtain tax benefits. However, respondent does not contend that petitioner is taxable because he established WNW for tax reasons but argues instead, consistently with the holding in Johnson and as discussed above, that petitioner is taxable on the $ 45,000 at issue because he controlled the earning of that income. Additionally, in Johnson, we noted, as a basis of distinction, two decisions involving employees who generated income pursuant to contracts between their corporate employers and the third parties using their services. *486 . In those decisions, the courts, faced with such contracts, held that the corporations, and not the employees, were taxable on income generated by the employees. The courts, citing the presence of the contracts, rejected the Commissioner's arguments that the employees, in attempting to avoid taxation, "assigned" income to the corporations in violation of the assignment of income principles of . ; , remanded . In the present case, however, the parties stipulated that WMW and CTI did not execute a contract for petitioner's services and, consequently, we find no basis for distinguishing Johnson herein. Finally, petitioner contends that, having paid the $ 45,000 at issue to WMW because of his employment contract, he is not taxable on that amount because WMW ultimately received the income. Contrary to petitioner's contention, however, the proper focus under established case law involves "the question *487 of which person or entity in fact controls the earning of the income rather than the question of who ultimately receives the income." , citing . In this regard, we have found above the WMW did not control petitioner's services at CTI and, consequently, we find no merit in petitioner's contention. Petitioner's present no further arguments of merit and, accordingly, we hold that they must include the $ 45,000 at issue in their 1982 gross income. Decision will be entered for the respondent.